**CARLSON LYNCH, LLP**
Todd D. Carpenter (CA SBN 234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (CA SBN 305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:    619-762-1910
Fax:    619-756-6991

**HINDMAN APC**
Jesse Hindman (CA SBN 222935)
jesse@hindmanapc.com
402 W. Broadway, Suite 1520
San Diego, CA 92101
Tel:    619-255-4078

*Counsel for Plaintiff and Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIN NORMAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., NEUTRON HOLDINGS, INC., SEGWAY, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS SEGWAY INC. OF DELAWARE, and XIOAMI USA LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Erin Norman ("Plaintiff"), brings this action on behalf of herself and all others similarly situated against Defendants Uber Technologies, Inc. ("Uber"), Neutron Holdings, Inc. doing business under the name Lime ("Lime"), Segway, Inc. ("Segway"), and Xioami USA LLC ("Xioami") (collectively, with Segway, the "Manufacturer Defendants") and states:

### NATURE OF THE ACTION

1.      Beginning in 2017, scooter rental companies (Bird, Lime, Jump) have proliferated around the United States—offering consumers a purportedly safe and convenient way to navigate cities as opposed to public transportation or automobiles.

2.    Jump, a division of the ride-sharing app company, Uber, is one such scooter rental company and has deployed a fleet of tens of thousands of scooters in cities across the country, including, *inter alia*, Atlanta, Denver, New Orleans, Tampa and San Diego. Uber recently sold its "Jump" business to Lime in or around May 2020 (hereinafter, the entities are collectively referred to as "Jump.").

3.    Jump advertises its scooters as "fun, affordable, and easy to use" and as requiring no instruction of any sort before a rider is able to lease a scooter and ride it.  All a prospective rider needs to do is download an application to their smartphone, use the app to locate an available scooter, activate the scooter with the app, and begin riding.

4.    To ride a scooter safely, due to the design and geometry of the vehicle, a rider must always use both hands.  Attempting to ride a scooter with one hand causes it to become very unstable— a danger that increases with speed.  Scooter manufacturers display warnings about the dangers of one-handed operation of a scooter prominently in the owner's manual.

5.    Both the Manufacturing Defendants who designed and sold the scooters to Uber and Lime are well aware that these scooters will be operated on city streets and that riders must obey all traffic laws while riding.

6.    Further, Defendants are well aware that virtually every state, including California, requires bicycle or scooter operators to employ hand signals when making turns if their bicycle or scooter is not equipped with an alternate means of signaling a turn.

7.    Jump does not warn its customers that following traffic laws will require operation of a scooter in a manner that is well known to be dangerous to passengers.

8.    The Manufacturing Defendants designed and intended their scooters to be used on city streets where signaling is required as a matter of law, but they did not equip their scooters with any device or mechanism to safely signal a turn while operating the scooter with both hands. Following the deployment of the scooters, the Manufacturing Defendants have actual knowledge that the scooters have been and continue to used in this manner; as an alternative to motorized transportation on city streets.

CLASS ACTION COMPLAINT

9.     As a result of the design defects, failure to warn, breach of express and implied warranties, and negligence of Defendants, Plaintiff was severely injured while riding a Jump scooter and operating it in a manner prescribed by the laws of California.  Ms. Norman brings this suit both to compensate her for her significant personal injuries, but also to seek a public injunction against Defendants enjoining them from selling or leasing scooters in the State of California without first providing the necessary warnings and/or providing a safe means of legal operation.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C § 1332 (d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class have a different citizenship from Defendants.

11.     The Northern District of California has personal jurisdiction over Defendants because each Defendant is a corporation or other business entity authorized to conduct and does conduct business in the State of California.  Defendants are registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails themselves of the California market through the placement of their scooter products into the stream of commerce throughout major metropolitan cities in California, including in the Northern District.

12.     Venue is proper under 28 U.S.C. § 1391(b)(2) because Defendants transact substantial business in this District.  A substantial part of the events giving rise to Plaintiff's claims arose here.

## PARTIES

13.     At the time of the incident described in this complaint, Erin Norman was a resident of San Francisco, California.  Ms. Norman currently lives in Lakewood, Colorado.

14.     Uber Technologies is a Delaware corporation, with headquarters in San Francisco, California.  In addition to ride-sharing services, Uber offers scooter rental services through its subsidiary, Jump.

CLASS ACTION COMPLAINT

15.     Lime is a U.S. company with headquarters in San Francisco, California.  Lime offers dockless vehicles which users find and unlock via a mobile app which knows the location of available vehicles using GPS.  Lime recently purchased the Jump business from Uber.

16.     Segway is a U.S. company with headquarters in Bedford, New Hampshire.  As of April 2015, Segway is a wholly-owned subsidiary of Ninebot, Inc., a Chinese transportation/robotics company, headquartered in Beijing, China.  Segway/Ninebot manufacture and sell numerous motorized personal vehicles, including the electric scooters marketed, distributed, and leased by Lime and/or Uber.

17.     Xiaomi USA, is the U.S.-based subsidiary of Xiaomi, a Chinese electronics company based in Beijing, China.  Xiaomi USA is based in San Jose, CA.  Xiaomi manufactures numerous electronic and robotic devices, including the electric scooters marketed, distributed, and leased by Lime and/or Uber.

**FACTUAL BACKGROUND**

**A.     Electric Scooters Are Unstable Unless Operated with Both Hands**

18.     While scooter manufacturers and scooter leasing companies like to claim that scooters are easy to ride and as safe as bicycles, that is not the case.

19.     Electric scooters are much less stable than bicycles. On a scooter, as compared to a bicycle, the handlebars and tires are all on the same axis of rotation, unlike bicycles that have an offset between the handlebars and front tire.  The lack of offset on a scooter makes the scooter more unstable than a normal bicycle, especially at speed.

20.     Because the scooter's front wheel is almost directly in line with where the rider stands, it makes the scooter more prone to tipping over. In contrast, a bicycle has a longer wheelbase. The front wheel of a bicycle is larger than a scooter's and the wheel is further out in front of the rider. All of this makes bicycles more stable and more forgiving when a rider encounters roadway unevenness.

21.     Additionally, scooters have much shorter handlebars than bicycles.  This means that relatively small movements of the hands on the handlebars can translate to greater turning of the tire, increasing instability, especially at speed.  In other words, scooters have a much smaller margin for error than bicycles and much more easily become unstable with less movement.

4

CLASS ACTION COMPLAINT

22.    Finally, scooters have much smaller tires than bicycles, adding to their comparatively greater instability.  Larger tires more easily deal with rocks, cracks and potholes than the scooters' smaller tires, which are solid as opposed to air-filled. The scooters' smaller, solid, wheels are much less forgiving on roadway imperfections than larger, air-filled bicycle wheels.  A small rock or height differential that can be easily navigated over by a bicyclist, can easily cause an electric scooter rider to lose control and crash.  Smaller tires are also more prone to wobble at speed than larger tires.

23.    If an electric scooter rider takes his or her hand off the handlebars to signal that the rider is turning or stopping, as the California Vehicle Code requires, the rider's risk of losing control and crashing is greatly increased. Complying with the law puts the scooter rider at great risk.

24.    All of these factors that render scooters less stable than bicycles are known to Defendants.  Indeed, Segway/Ninebot expressly warns its customers that operating a scooter safely can only be accomplished with both hands and places this, or similar, warnings in its owner manuals:[1]



 DO NOT take your hands off the handlebar while riding. Do not ride with one hand only.

---

[1]https://store.segway.com/pub/media/wysiwyg/warranty/kickscooter-es-user-manual.pdf

CLASS ACTION COMPLAINT

**B.     Electric Scooters Are Not Equipped with Turn Signals**

25.     None of the electric scooters marketed, deployed, and leased by Defendants Uber or Lime to the public in California, which on information and belief, are manufactured by Defendants Segway and Xiaomi USA, are equipped with electric turn signals.

26.     The technology exists to add turn signals to the scooters. Manufacturers of personally owned scooters have added turn signals.

27.     Additionally, aftermarket turn signal products are widely available which can be affixed to personally owned scooters for safer operation.  However, the scooters deployed on the public by Defendants for single use, app-based leasing, expressly prohibit any modification to the scooters. According to Lime's User Agreement, users must "return (meaning locking up and/or deactivating) a Product in the same condition in which you received it.  If you damage it (accidentally or intentionally), or fail to properly return it and damage occurs, you'll be responsible for the associated costs."[2]  Lime scooters also have an express 24 hour limitation on use, so it would be illogical for any user to attempt to add turn signals to a scooter.

28.     There is no excuse for Defendants not to add turn signals to the electric scooters deployed on the unsuspecting public.  If these Defendants cared about the safety of their riders, they would add turn signals to every scooter in their fleet.

**C.     California Law Requires Riders to Signal with One Hand When Turning or Slowing Down/Stopping if No Other Means of Signaling Is Available**

29.     Under California Vehicle Code Section 21221, electric scooter riders are required to follow the same rules applicable to motorists.

30.     California, like most states, requires the operator of any vehicle to signal before turning. Vehicle Code Section 22107 requires the use of a signal before turning.  More specifically, California Vehicle Code Section 22108 requires that "[a]ny signal of intention to turn right or left shall be given continuously during the last 100 feed traveled by the vehicle before turning."

31.     California Vehicle Code Section 22109 provides that "[n]o person shall stop or suddenly decrease the speed of the vehicle on a highway without first giving an appropriate signal in

---

[2] http://www.li.me/user-agreement

CLASS ACTION COMPLAINT

the manner provided in this chapter to the driver of any vehicle immediately to the rear when there is an opportunity to give the signal."

32.     Thus, a scooter rider cannot turn right or left, slow down or stop before signaling under California law.

33.     California Vehicle Code Section 22110 provides that "[d]rivers of vehicles not required to be and not equipped with turn signals," like scooters, "shall give a hand and arm signal when required by this chapter."

34.     California Vehicle Code Section 22111 specifies the way in which hand signals shall be given: "All required signals given by hand and arm shall be given from the left side of a vehicle in the following manner: (a) Left turn--hand and arm extended horizontally beyond the side of the vehicle. (b) Right turn--hand and arm extended upward beyond the side of the vehicle, except that a bicyclist [or scooter operator] may extend the right hand and arm horizontally to the right side of the bicycle [or scooter]. (c) Stop or sudden decrease of speed signal--hand and arm extended downward beyond the side of the vehicle."

35.     Thus, under California law, if a scooter operator is turning, stopping, or slowing down, the operator of the scooter must—for *100 continuous feet*—operate the scooter with one hand while giving the prescribed signal with the other hand.  In the case of braking, this would require the operator to both operate the brake and steer the scooter while giving the appropriate hand signal.

**D.     Defendants Knew That Jump Scooters Would be Operated in an Unsafe Manner and Failed to Properly Warn**

36.     Defendants were and continue to be aware that Jump Scooters would be operated in an unsafe manner on California roadways.

37.     Uber expressly requires all of its riders to agree to obey all traffic laws while operating a Jump scooter.

38.     With the recent acquisition of Jump by Lime Scooters[3]—merging two of the largest scooter rental companies into one organization—the Jump Scooter webpage now redirects its

---

[3] In May, Lime acquired Jump and the two companies now are a single entity.  *See* "Lime now owns Uber's Jump bike and scooter service" https://www.engadget.com/uber-lime-investment-144314796.html (last accessed July 22, 2020).

CLASS ACTION COMPLAINT

customers to the Lime's website for purposes of safety information and rules that renters must follow when operating a Jump or Lime Scooter.

39.     The Lime website expressly notes both the requirement to follow all traffic laws *and* the requirement that Jump/Lime scooters be operated with one hand when turning or stopping.

40.     Specifically, Lime's User Agreement provides:

> While we do our best to educate you on local laws governing how to use our Products, ***please ensure that you have familiarized yourself with these laws as well, which you must follow when you use our Services***. Don't use our Services in prohibited areas, and make sure you understand the laws on sidewalk use, parking, seat belts, child safety seats and alcohol/drug use during operation.[4]

41.     Specifically, Lime's website advises all riders it must follow all traffic laws when riding a Jump/Lime Scooter:



Always follow traffic laws

42.     Then, on the same page, and just below the image above, Lime/Jump make clear that this requirement necessitates the operation of the scooter with one hand when turning or stopping:

## Hand Signals

  

Left Turn                  Right Turn                  Stop

---

[4] http://www.li.me/user-agreement

CLASS ACTION COMPLAINT

43.     The Manufacturing Defendants are well aware that the scooters they manufacture for Uber/Lime will be operated on public roadways and subject to Uber/Lime's rules, which require the rider to operate the scooter consistent with California traffic laws, including the requirement that the scooters be operated with only one hand while signaling.

44.     Jump is likewise well aware that its scooters will be operated on public roadways:

> There will not always be a designated place for you to ride, such as a bike lane, so exercise caution when riding around cars and other traffic (we aren't responsible for the actions of drivers, pedestrians, or other third parties).[5]

45.     Despite this knowledge, and despite knowing that it is unsafe to operate a scooter with one hand, the Manufacturing Defendants deliver scooters to Uber and Lime without any alternative manner to indicate either turning or slowing/stopping, such as the inclusion of turn signals and adequate brake lights, when such options are available and could be easily incorporated into the scooter's design at a reasonable cost.

46.     In short, electric scooters are very unstable and require two hands. Following California law and giving hand signals is dangerous for a scooter rider. The only way to cure this danger is for scooter companies, including Defendants, to either make the scooters more stable, or to add electric turn signals to the scooters, permitting riders to comply with the California Vehicle Code while keeping both hands on the handlebars at all times.  The Defendants' scooters also fail to adequately warn users of these risks because they do not warn that scooter riders' compliance with the California Vehicle Code causes Defendants' scooters to be inherently unsafe to ride.

**E.     Plaintiff Followed California Traffic Laws and Was Injured**

47.     On August 26, 2019, Plaintiff Norman downloaded the Jump application onto her smartphone and opened an account with Jump for the purpose or renting scooters to travel around the San Francisco area.

48.     When registering as a user, Norman read the rules requiring her to abide by all applicable traffic laws in all respects while operating a Jump scooter, which included the requirement that she use hand signals when initiating turns or slowing/stopping a scooter.

---

[5] https://www.li.me/user-agreement

CLASS ACTION COMPLAINT

49.     On October 29, 2019, at 5:50 p.m., Norman used the Jump application on her smartphone and initiated a scooter rental in San Francisco.

50.     Approximately 15 minutes later, Norman was operating her scooter at the intersection of Pierce St. and Haight St. in San Francisco, when she removed her hand from the handlebars of the scooter to signal that she was initiating a turn.

51.     When Norman removed her hand from the handlebar of the scooter, the scooter became unstable and Plaintiff lost control of the scooter and the scooter turned quickly, sending Plaintiff falling to the concrete.

52.     Police and ambulance were called to the scene of the accident and Norman was taken to the hospital, CPMC Davies Campus, where she was re-triaged to Zuckerberg San Francisco General Hospital and Trauma Center due to the seriousness of her orthopedic injuries.

53.     Ms. Norman's injuries included a hip dislocation and multiple related fractures which required a complex emergency surgery lasting hours.  These injuries have required many months of medical care and intense physical therapy which is ongoing even nine months after the accident. Substantial future medical care is anticipated including the prospect of multiple hip replacement surgeries over her lifetime. Ms. Norman's quality of life has been unquestionably diminished.

## CLASS ACTION ALLEGATIONS

54.     In addition to her individual claims, Plaintiff brings an action for injunctive relief on behalf of herself and all others similarly situated, as well as the general public, pursuant to Rule 23(a), and (b)(2) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants for violations of California state laws:

All individuals in the State of California who will rent one of Defendant's scooters.

Excluded from the Class are Defendants, as well as their officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of any of the Defendants. Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with her motion for Class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

55.     ***Numerosity***: The Class members are so numerous that joinder of all members is impracticable.   Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of individuals who have been harmed or otherwise exposed to Defendants' conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

56.     ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.   These common legal and factual questions include, but are not limited to, the following:

a.     Whether Defendants sold, marketed, leased or rented scooters that are unreasonably dangerous for use on public roads;

b.     Whether Defendants' product literature fails to provide adequate warnings of danger or instructs riders to operate the scooters in an unsafe manner;

c.     Whether Defendants' product literature misleads the public concerning the safety of operating the scooters on public roads, the ability to safely comply with California traffic laws and the ability to safely hand signal;

d.     Whether Defendants knowingly sold, leased or rented scooters that were unsafe for their intended use on public roads or knowingly provided inadequate or misleading product literature;

e.     Whether there are alternative means of signaling turns and/or stops on Defendants' scooters (i.e. simple turn signal lights) that would have removed the danger to Plaintiff and the public;

f.     Whether Defendants' alleged conduct constitutes violations of the laws asserted;

g.     Whether Defendants engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

h.     Whether Defendants engaged in false or misleading advertising;

i.     Whether the products manufactured or leased by Defendants were defective due to the safety issues inherent in the design and rules of use;

CLASS ACTION COMPLAINT

j.      Whether Defendants breached the implied warranty of merchantability when selling, leasing or renting scooters that could not safely be operated on public roads, or in compliance with applicable rules or relevant California traffic laws.

k.      Whether an injunction is necessary to prevent Defendants from continuing to sell, lease or rent scooters for use on public roads that are unreasonably unsafe for such use or are marketed with inadequate or misleading product literature.

57.      **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Defendants' false and deceptive conduct and were or could be injured by Defendant's selling, leasing or renting of inherently unsafe products.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

58.      **Adequacy**: Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no antagonistic or adverse interest to those of the Class.

59.      **Superiority**: The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the Class for the wrongs alleged.  The risk of inconsistent or varying adjudications on the ultimate question as to whether the scooter vehicles can be operated safely in compliance with California law is significant. Thousands of individuals operate the scooter vehicles and are injured on an annual basis. Absent the class action, the risk of varying or contrasting verdicts or adjudication of liability is significant. Such findings on liability at trial could engender a preclusive effect or impact the claims of other similarly situated putative Class members.

60.      All Class members, including Plaintiff, were or will be exposed to one or more of Defendants' misleading, unsafe and unfair practices.  All Class members were and are required to obey all California traffic laws when operating a scooter manufactured, sold, leased or rented by Defendants and all Class members are uniformly exposed to the design defect and inadequate and/or misleading product literature associated with Defendants' scooters that renders them patently unsafe to operate on

public roadways. In addition, it can be reasonably presumed that all Class members, including, Plaintiff affirmatively acted in response to the requirements of operation under the terms of Uber/Lime's customer lease agreements.

61. Defendants keep extensive records of their customers, their contact information, and their purchase, lease or rental histories, including maintaining email, phone and address records that could be used to disseminate notice of this action in accordance with due process requirements.

**FIRST CAUSE OF ACTION**

**Negligence/Gross Negligence**
**(On behalf of Plaintiff)**

62. Plaintiff reincorporates and realleges all preceding paragraphs as though fully set forth herein.

63. At all relevant times, Defendants had an affirmative duty to provide a safe product to their customers and to provide for the safety of their customers. Defendants as manufacturers, sellers, lessors and renters of scooters that will be operated on city streets, had a duty to use appropriate reasonable care to provide a safe riding experience for their customers.

64. Defendants breached those duties by negligently providing scooters for use on public roadways that could not be safely operated while obeying relevant traffic laws. Defendants knew that the scooters would be used on public roadways in California, where operators would be required pursuant to general safety standards, applicable rules and relevant traffic laws to drive the scooter with one hand when signaling turns or deceleration, but failed to provide a safe way to operate the scooters while obeying traffic laws.

65. Defendants further breached their duty to Plaintiff by negligently failing to warn her of the dangers posed by operating the vehicle in compliance with general safety standards, applicable rules and California traffic laws, which Defendants knew would require Plaintiff to unsafely operate the scooter with one hand.

66. Despite warnings and instructions from Manufacturing Defendants that their scooters could not safely be operated without both hands on the handlebars, Lime\Jump requires that its customers obey all traffic laws including use of hand signals while turning or stopping. Despite

knowledge that their scooters would be put into use on California roadways without functionality that would allow operators to safely ride and comply with applicable rules and traffic laws including use of hand signals while turning or stopping, Manufacturing Defendants sold or otherwise provided scooters to its customers including Lime\Jump in California.

67.     As a direct and legal consequence of the negligence and gross negligence of Defendants, Plaintiff was harmed and sustained significant injuries including acute trauma to her hip which has required and will continue to require medical attention at great cost to Plaintiff.  In addition, Plaintiff has suffered mental, physical and nervous pain and suffering, all to her general damage in an amount which will be proven at trial.

68.     As a direct and legal consequence of the negligence and gross negligence of Defendants, Plaintiff was disabled and may be disabled in the future from attending to the duties of her future occupation.  Plaintiff has lost earnings and may continue to lose earnings in the future, all in an amount that is currently unknown, but will be proven at trial.

## SECOND CAUSE OF ACTION

### Strict Products Liability – Design and Manufacturing Defect
### (On behalf of Plaintiff)

69.     Plaintiff reincorporates and realleges all preceding paragraphs as though fully set forth herein.

70.     Defendants designed, manufactured, sold, leased or rented the scooter Plaintiff was riding when she was injured.

71.     At the time the scooter that Plaintiff was riding when she was injured left the control of Defendants, it was dangerous and defective as a result of a design, manufacture, alteration, or modification by Defendants.  The defects included the inability to signal either a turn or deceleration/stopping without attempting to operate the scooter with one hand, which was an inherently dangerous way to operate the scooter.

72.     Defendants knew and intended that the scooter would be purchased, rented, leased and operated by members of the general public who would rely on the incorrect belief that Defendants had

designed, manufactured, marketed and distributed the scooter in a safe manner and had also transmitted any necessary and relevant warnings about the use of the scooter.

73.     Defendants have recklessly designed, manufactured, marketed, sold, leased and/or rented the scooters with wanton and willful disregard for the health of Plaintiff and others, and with malice, placing their economic interest above the health and safety of Plaintiff.

74.     The scooter used by Plaintiff was not substantially changed, modified, or altered at any time and in any manner whatsoever prior to use and the scooter reached Plaintiff in a condition that was unreasonably dangerous to her.

75.     At the time of Plaintiff's accident, she was using the scooter in a manner that was foreseeable by Defendants and in the manner in which the scooter was specifically intended to be used.

76.     At no time did Plaintiff have reason to believe that the scooter was in a condition not suitable for its proper and intended use.  Furthermore Plaintiff was not able to discover, nor could she have discovered through the exercise of reasonable care, the defect inherent in the scooter nor should Plaintiff have known that Defendants had manufactured and distributed the scooter in a such a way as to increase the risk of harm or injury to persons using the scooters.

77.     Defendants designed, manufactured, sold, leased, and/or rented the scooters knowing its manufacture or design were defective, causing the scooter to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

78.     The risks inherent in the design of the scooter outweigh any benefits of that design.

79.     As a direct and legal consequence of this dangerous and defective condition, and the failures by Defendants to warn about the dangerous and defective manufacture or design, Plaintiff was injured and suffered damages as alleged.  This dangerous and defective manufacture or design was a substantial factor in causing Plaintiff's harm.

## **THIRD CAUSE OF ACTION**

### **Strict Product Liability – Failure to Warn of Defective Condition**
### **(On behalf of Plaintiff)**

80.     Plaintiff reincorporates and realleges all preceding paragraphs as though fully set forth herein.

CLASS ACTION COMPLAINT

81.     Defendants designed, manufactured, sold, leased or rented the scooter Plaintiff was riding when she was injured.

82.     Defendants failed to provide adequate warnings or instructions concerning the substantial risks of using the scooter as intended, which Defendants had actual or constructive knowledge of at the time the scooters were being designed, manufactured, sold, rented and/or leased.

83.     The potential risks inherent in the normal operation of the scooters were known or knowable by Defendants through the use of scientific and other knowledge available at the time of the design, manufacture, sale, rental and/or leasing of the scooter.   Defendants knew, or exercising reasonable care, should have known that the potential and/or inherent risks presented a substantial danger to the users of the scooters because Defendants possessed special knowledge of the design, characteristics and assembly of the scooters.

84.     Plaintiff and other consumers did not have that specialized knowledge and would not recognize that the scooter was dangerous or defective.

85.     In fact, Manufacturing Defendants' own product literature demonstrates the knowledge and/or constructive knowledge of all Defendants that their scooters could not be operated safely and riders could not safely comply with applicable rules and relevant traffic laws including use of hand signals while turning or stopping.   Despite warnings and instructions from Manufacturing Defendants that their scooters could not safely be operated without both hands on the handle bars, Lime\Jump's own product literature affirmatively requires that its customers obey all traffic laws including use of hand signals while turning or stopping.

86.     Defendants intentionally, recklessly and maliciously misrepresented the safety, risks and benefits of the scooters including Plaintiff's scooter, understating the risks of using them as intended, in order to advance their own financial interests, with wanton and willful disregard for the safety of Plaintiff.

87.     Plaintiff was harmed and suffered the injuries and damages alleged as a direct and legal result of Defendants' failure to adequately warn and misleading literature concerning the inherent dangers in operating the scooters on public roads.   This lack of proper warning and/or misleading literature was a substantial factor in causing Plaintiff's harm.

CLASS ACTION COMPLAINT

# FOURTH CAUSE OFACTION

### Negligent Products Liability
### (On behalf of Plaintiff)

88.     Plaintiff reincorporates and realleges all preceding paragraphs as though fully set forth herein.

89.     Defendants designed, manufactured, tested, produced, sold, leased and/or rented for use by the public the scooter ridden by Plaintiff.

90.     Defendants owed duties of care to actual and potential customers with regard to the scooters.  These duties included, but were not limited to: designing, manufacturing, distributing, selling renting and leasing the scooters in a fashion that was safe to consumers; designing and manufacturing the scooters so as to reasonably minimize the potential for injury; labeling and providing instructions regarding the use of the scooters so as to reasonably warn consumers of the potential for danger; and reasonably applying knowledge and information from past incidents, or other experiences or investigations, to provide for the safety of consumers with respect to the scooters.

91.     Defendants should have known or knew that the scooters were negligently and carelessly manufactured, designed, labeled, delivered, and provided with warnings prior to sale, leasing, renting or other means of distributing to consumers and that, if used by a member of the public in the manner expected, would lead to serious and permanent injury.

92.     The condition of the scooters, including the scooter ridden by Plaintiff, was known to Defendants and each of them could or should have discovered the unsafe condition through the exercise of ordinary care and reasonable diligence, but that condition was not disclosed or made known to purchasers or users of the scooters, including Plaintiff.

93.     None of the users of the scooters, including Plaintiff, knew of the defective condition of the scooters or the inherent danger of using the scooters in their intended manner.

94.     In doing the acts alleged herein, Defendants violated statutes, rules, standards, regulations, or guidelines applicable to Defendants' conduct, including laws and regulations relating to the manufacture, distribution, sale and leasing of the scooters.

CLASS ACTION COMPLAINT

95.     The injuries and damages to Plaintiff were a direct and legal consequence of the violations of the statutes, regulations, rules, standards and guidelines by Defendants.

96.     The statutes, regulations, rules, standards and guidelines violated by Defendants were written to prevent the type of incidents and injuries that occurred in this matter and Plaintiff is among the Class of persons the statutes, regulations, rules, standards and guidelines were written to protect.

97.     As a direct and legal consequence of the negligence and carelessness of the Defendants, Plaintiff has suffered and continues to suffer serious and permanent physical and emotional injuries, has expended and will continue to expend large sums of money for medical care and treatment, and has other otherwise been physically and economically injured.

98.     The negligence and carelessness of Defendants was a substantial factor in causing the injuries and damages alleged above.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation
### (On behalf of Plaintiff)

99.     Plaintiff reincorporates and realleges all preceding paragraphs as though fully set forth herein.

100.    Defendants represented to Plaintiff and the public that the scooters were safe for use on public roadways while obeying traffic laws.  Defendants' scooters are not safe for use on public roadways or while obeying traffic laws because there is no mechanism on the scooters to safely signal turns or deceleration/stopping without taking the users hand off of the handle bars.

101.    Given the information available to Defendants, including without limitation Manufacturing Defendants' product literature instructing scooter operators to not take hands off the handlebars, Defendants had no reasonable grounds for believing that the scooters were safe for use on public roadways or while obeying traffic laws.

102.    Defendants intended that customers, including Plaintiff, rely on Defendants' representations concerning the safety of their scooters when marketing, selling, renting, or leasing the scooters.

CLASS ACTION COMPLAINT

103.    Plaintiff reasonably relied on Defendants' representations concerning the safety of their scooters when she leased or rented the scooter in question and when she attempted to hand signal and compliance with California traffic laws.

104.    As a direct and legal consequence of Defendants' misrepresentations, Plaintiff has suffered and continues to suffer serious and permanent physical and emotional injuries, has expended and will continue to expend large sums of money for medical care and treatment, and has other otherwise been physically and economically injured.

105.    Plaintiff's reliance on Defendants' misrepresentation was a substantial factor in causing her harm.

## SIXTH CAUSE OF ACTION

### Breach of Implied Warranty
### (CLASS ALLEGATION)

106.    Plaintiff reincorporates and realleges all preceding paragraphs as though fully set forth herein.

107.    Defendants impliedly warranted that the scooters, including the scooter ridden by Plaintiff, were merchantable and were fit for the ordinary purpose for which they were intended.

108.    Plaintiff and Class members purchased, leased or rented the scooters from Defendants.

109.    At the time Plaintiff and Class members purchased, leased or rented the scooters from Defendants, Defendants were in the business of selling, leasing or renting these goods and/or Defendants held themselves out as having special knowledge or skill regarding these goods.

110.    When the scooters were used by Plaintiff and Class members, they were used in the ordinary purpose for which they were intended.

111.    The scooters were not fit for the ordinary purposes for which these goods are sold, leased or rented as they cannot be safely operated on public roads or in compliance with relevant traffic laws.

112.    Plaintiff and Class members relied on Defendants' implied warranty of merchantability in using the scooters.

113.    Defendants breached these implied warranties of merchantability because the scooters were neither merchantable nor suited for its intended uses as warranted.

114. Defendants' breach of their implied warranties resulted in the use of an unreasonably dangerous product by Plaintiff and Class members, placing Plaintiff and Class members in jeopardy.

115. As a direct and legal consequence of Defendants' breach of their implied warranties, Plaintiff and Class Members have and will continue to purchase and lease scooters that are unreasonably unsafe and dangerous and unknowingly expose themselves to an extreme risk of injury that they would not knowingly expose themselves to if they were aware of the inherently dangerous condition of the scooters.

116. As a result of Defendants' breaches, Plaintiff and Class members have paid or will continue to pay for the use of scooters that are unsafe to use on public roads or in accordance with California traffic laws.

## SEVENTH CAUSE OF ACTION

**Violation Unfair Competition Law**
**Business and Professions Code § 17200 *et seq.***
**(CLASS ALLEGATION)**

117. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

118. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

119. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

120. By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its scope acts and practices not specifically proscribed by any other law.

121. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and

CLASS ACTION COMPLAINT

that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

122.    Defendants' conduct violates the UCL by fraudulently, unfairly, immorally, unethically, and unscrupulously placing scooters into public use when Defendants know or should have known that those scooters cannot be operated safely on public roads or while obeying California traffic laws.

123.    Defendants' conduct was not motivated by any legitimate business or economic need or rationale and the harm and adverse impact on consumers was neither outweighed nor justified by any legitimate reason, justification, or motive.

124.    The harm to Plaintiff and Class members from Defendants' unfair practices relating to the failure to design or lease the scooters in a manner in which they could be operated safely greatly outweighs the utility, if any, of those practices.

125.    The harm to Plaintiff and Class members outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

126.    As a result of Defendants' violations of the UCL, Plaintiff and Class members will continue to pay and lease scooters that are unreasonably unsafe and dangerous and unknowingly expose themselves to an extreme risk of injury that they would not knowingly expose themselves to if they were aware of the inherently dangerous condition of the scooters.

127.    As a result of Defendants' violations of the UCL, Plaintiff and Class members have paid or will continue to pay for the use of scooters that are unsafe to use in accordance with California traffic laws.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

a.    Declaring Defendants' failure to provide scooters that are safe for use on public roads or in accordance with California traffic laws wrongful and unfair;

b.      An order on behalf of the general public enjoining Defendants from continuing to employ unfair and deceptive business practices alleged in this complaint and any other acts and practices proven at trial;

c.      A public injunction removing the scooter vehicles from use until the public is properly warned about their inherently dangerous condition, and/or until the scooter vehicles' defective turn signaling system is replaced or rectified.

d.      General and compensatory damages in an amount according to proof at trial;

e.      Special damages in an amount according to proof at trial;

f.      Punitive damages;

g.      Interest and prejudgment interest as permitted by law;

h.      Costs of litigation and expert costs incurred herein; and

i.      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated herby demand a trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: September 24, 2020

**CARLSON LYNCH LLP**

By:    */s/Todd D. Carpenter*
Todd D. Carpenter (CA SBN 234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (CA SBN 305051)
sbraden@carlsonlynch.com
1350 Columbia St., Ste. 603
San Diego, CA 92101
Tel.:    619-762-1900
Fax:    619-756-6991

**HINDMAN APC**
Jesse Hindman (CA SBN 222935)
jesse@hindmanapc.com
402 W. Broadway, Suite 1520
San Diego, CA 92101
Tel:    619-255-4078

*Counsel for Plaintiff and Proposed Class*

CLASS ACTION COMPLAINT